* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties. *Page 2 
2. All parties are properly before the Industrial Commission. The Industrial Commission has jurisdiction over the parties and the subject matter. This case is subject to the North Carolina Workers' Compensation Act, and the parties are bound by and subject to the North Carolina Workers' Compensation Act.
3. An employment relationship existed between plaintiff and defendant-employer, Noranda Finances, at the time of injury on February 17, 2005.
4. Plaintiff's average weekly wage was $871.63, with a compensation rate of $581.09.
5. On April 23, 2005, plaintiff sustained an injury by accident to his spine, arising out of and in the course of his employment with defendant-employer. Plaintiff's claim has been accepted as compensable pursuant to a Form 60.
6. The issues for determination are as follows:
 a. Whether home health care is reasonably necessary to effect a cure, provide relief or lessen the period of plaintiff's disability?
 b. Whether the rhapsody temper/pedic king size bed as recommended by Dr. William Bockenek is reasonably necessary to effect a cure, provide relief or lessen the period of plaintiff's disability?
 c. Whether plaintiff's spouse is entitled to reimbursement and future payment for plaintiff's attendant care?
 d. Whether the defendants shall provide a protective device for the transportation of plaintiff's motorized wheelchair?
 e. Whether the whole cost of the proceedings, including reasonable attorney fees for plaintiff's attorney, shall be assessed against the defendants? *Page 3 
 * * * * * * * * * * * EXHIBITS
The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: CD of plaintiff's medical records
 b. Stipulated Exhibit #2: I.C. Forms and filings
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was years 39 old. Plaintiff sustained a compensable injury by accident on April 23, 2005, when he was working on a welded six to eight foot diameter triangular I-beam frame that came loose as he was holding it. Plaintiff sustained an injury to his spine. This claim was accepted by the filing of a Form 60 on August 9, 2005.
2. On May 19, 2005, plaintiff presented to orthopedic surgeon, Dr. Scott Ellison at Romedical Care, Inc. As a result of plaintiff's bowel and bladder symptoms, Dr. Ellison recommended an MRI to his lumbar back. On May 21, 2005, plaintiff contacted Dr. Ellison due to an increase in severe pain. The May 19, 2005 MRI revealed a central disc protrusion at L4/5, slightly off-centered to the right. As a result of plaintiff's decreasing bowel function, his increasing pain and clinical picture suggestive of cauda equina, Dr. Ellison recommended and performed an emergency surgical decompression on May 21, 2005.
3. In June 2005, it was recommended that plaintiff begin physical therapy. On September 1, 2005, plaintiff returned to Dr. Ellison with complaints of back and leg pain as well as bowel and bladder dysfunction. Plaintiff was also reporting neck pain and right shoulder pain. *Page 4 
Dr. Ellison recommended plaintiff undergo a neurosurgical evaluation at the Charlotte Institute of Rehab and pain management evaluation for treatment of his residual pain.
4. On December 6, 2005, plaintiff presented to Dr. William Bockenek. Dr. Bockenek noted that plaintiff had suffered a large disc herniation at L4/5 and had been diagnosed with possible cauda equine syndrome with persistent upper motor neuron findings of unclear etiology. Dr. Bockenek recommended plaintiff undergo urodynamics to assess the bladder function.
5. Plaintiff continued to receive conservative treatment from Dr. Ellison. On April 6, 2006, Dr. Ellison recommended a functional capacity evaluation (FCE). The FCE was performed on May 9, 2006, and rated plaintiff capable of work in a sedentary capacity. On May 18, 2006, Dr. Ellison placed plaintiff at maximum medical improvement and assigned a 50% permanent partial impairment rating to his back. Dr. Ellison released plaintiff to return to sedentary work per the FCE restrictions.
6. Subsequent to his release by Dr. Ellison, plaintiff has received continuing treatment from Dr. Mark Hines for pain management. Defendants have authorized and paid for Dr. Hines' treatment. On July 21, 2006, Dr. Hines ordered a home health assessment, which was performed by Maxim Healthcare Services on August 7, 2006. The assessment recommended home healthcare by a Certified Nursing Assistant (CNA) for a minimum of four to six hours a day, seven days a week.
7. Ms. Denise Sutton, Director of Nursing with Maxim Healthcare Services testified that a Certified Nursing Assistant would receive $14.60 per hour from Medicaid for the same services that would be provided to plaintiff. On August 31, 2006, Dr. Hines recommended that plaintiff receive the home health care as recommended by the assessment. *Page 5 
8. Defendants requested a second opinion regarding the necessity of home care for plaintiff from Dr. Bockenek. On September 12, 2006, Dr. Bockenek opined that the home health care was medically necessary for plaintiff.
9. The Full Commission finds as fact that the home health care as recommended by Drs. Hines and Bockenek is reasonably necessary to effect a cure, provide relief or lessen the period of plaintiff's disability.
10. The assessment recommending home health care was based in part upon Ms. Sutton's conclusion that plaintiff suffered from 75% nerve damage to his legs. Although Dr. Ellison opined that an exact percentage of nerve damage is not possible to calculate, there is no question that plaintiff suffers significant nerve damage to his legs.
11. The expertise of both Drs. Curling and Ellison is in surgical intervention, whereas Drs. Hines and Bockenek, as well as Ms. Sutton, all share an expertise in the rehabilitation process subsequent to surgery. For these reasons, the Full Commission gives greater weight to the opinions of Ms. Sutton and Drs. Hines and Bockenek regarding plaintiff's need for home health care than to those of Drs. Curling and Ellison.
12. Another primary factor in the recommendation of home health care was the desire of plaintiff's wife to return to work. Plaintiff's wife has been providing the home health care services recommended by the assessment since plaintiff returned to their home. There is insufficient evidence in the record to show how many hours per day plaintiff's wife was required to perform services that were solely the result of plaintiff's compensable injury; therefore, it cannot be found that she is entitled to payment prior to the date the treating physicians recommended the care. Accordingly, the Full Commission finds that upon the recommendation of home health care by Dr. Hines, followed by that of Dr. Bockenek on September 12, 2006, *Page 6 
home health care became a due and payable medical benefit under the Act and plaintiff's wife became eligible for payment for the provision of those services in the amount of $14.60 per hour for 28 hours per week.
13. On November 6, 2006, plaintiff returned to Dr. Ellison with complaints of residual sphincter and bladder problems; that he had to stand for a prolonged period of time in order to avoid these issues; that for approximately six months, he had developed increased burning in both feet, worse on the left; and for a week he had been experiencing a burning pain from his left low back down to his left foot, which prompted a visit to the emergency room. Dr. Ellison reviewed a recent lumbar myelogram report, which revealed a right S1 nerve root sleeve, partially obstructed a bulging disc at L3/4. Dr. Ellison released plaintiff from work and recommended a left S1 nerve root block.
14. Defendants requested an Independent Medical Evaluation with Dr. O. Del Curling. Plaintiff presented to Dr. Curling on November 8, 2006. Dr. Curling concurred with Dr. Ellison, and recommended diagnostic L5 nerve root blocks to determine if the L5 roots were a significant contributor to his pain. Dr. Curling opined that "treatment recommendations" would be dependent upon the results of the nerve blocks, which were subsequently performed on November 16, 2006.
15. On December 13, 2006, Dr. Ellison noted that plaintiff had nonpurposeful soiling about once or twice a day. As a result of plaintiff's symptoms and the nerve block results, Dr. Ellison recommended a lumbar decompression at L5/S1, foraminotomies, and revision of the instrumentation at L4/5 with revision arthrodesis at that level posterolaterally. Dr. Ellison opined that the main benefits of the surgery would be relief of ambulatory leg and buttock pain and some relief of back pain. *Page 7 
16. On February 6, 2007, Dr. Ellison performed a revision surgery to L4-5 and decompressed the L5-S1 level.
17. On May 9, 2007, plaintiff returned to Dr. Ellison with complaints of continued low back pain. Dr. Ellison recommended a rectal manometry to determine a cause of plaintiff's bowel incontinence, which was thereafter performed by Dr. Clements. The results of the manometry indicated that although plaintiff exhibited decreased rectal sensation from a subjective standpoint, plaintiff's internal and external inner sphincter function was normal from an objective standpoint.
18. Despite the findings of the manometry, there is no expert testimony that supports a finding that plaintiff's bowel incontinence does not exist or is not a factor in his rehabilitation. Dr. Curling noted that the condition could be the result of plaintiff's medications or the decreased rectal sensation.
19. Plaintiff cannot ambulate without his cane and requires a wheelchair for longer distances. The defendants provided plaintiff with an electric wheelchair. Since the wheelchair motor cannot be exposed to water, plaintiff requested a cover to place over the wheelchair because the only means he has of transporting the chair is in the exposed bed of his truck. Plaintiff testified that the "grill cover" provided by defendants does not cover the motor of the chair and as of the hearing before the Deputy Commissioner, defendants had not provided plaintiff with a satisfactory cover.
20. On November 20, 2006, Dr. Bockenek prescribed a rhapsody tempur/pedic king size bed to accommodate plaintiff's medical needs. Dr. Bockenek recommended an orthopedic bed for plaintiff in order to relieve plaintiff's pain and to make him more comfortable so he could sleep at night. Dr. Bockenek testified that pain issues are going to be worse if one is not *Page 8 
sleeping at night. The Full Commission gives little weight to the opinion of Dr. Curling, who insists that no bed offers orthopedic assistance and no one needs one.
21. The Full Commission finds that Dr. Bockenek recommended a king size bed; the medical evidence confirms plaintiff is large man, six feet in height and weighing 200 pounds; and plaintiff and his wife currently sleep together in a king size bed. Consequently, the Full Commission further finds that a king size orthopedic bed is reasonably necessary to effect a cure, provide relief or lesson the period of plaintiff's disability.
22. Since November 6, 2006, plaintiff's authorized treating physicians have released him completely from work.
23. Plaintiff's average weekly wage was $871.63, with a compensation rate of $581.09.
24. Defendants have not defended this claim unreasonably.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on April 23, 2005. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident, plaintiff's treating physicians have released him from work since November 6, 2006. As a result, he is entitled to temporary total disability benefits in the amount of $581.09 per week commencing on November 6, 2006 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29. *Page 9 
3. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff is entitled to home health care pursuant to the recommendation of Drs. Hines and Bockenek, submitted on September 12, 2006, as such is reasonably necessary to effect a cure, provide relief or lessen the period of plaintiff's disability. Accordingly, plaintiff's wife is entitled to payment in an amount equal to $14.60 per hour for 28 hours per week, beginning on September 12, 2006 and continuing until alternative care is obtained. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to a king size orthopedic bed pursuant to the recommendations of his treating physicians, specifically Dr. Bockenek, as it is reasonably necessary to effect a cure, provide relief or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and97-25.
6. Plaintiff is entitled to a suitable cover for the motorized wheelchair provided by defendants that will shield the chair from the elements during transport. In the absence of a suitable cover, defendants shall be responsible for the repair of the chair whenever it is damaged as a result of exposure to the elements. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
7. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by the insurer when the Commission orders the insurer to make or continue payments of compensation to the injured employee.
8. Defendants have not defended this claim unreasonably, and plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * * *Page 10 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $581.09 per week from November 6, 2006 and continuing. Compensation that has accrued shall be paid in a lump sum also subject to the attorney's fee.
2. Defendants shall pay for home health care for 4 hours per day, seven days per week, until further Order of the Commission.
3. Defendants shall pay plaintiff's wife for attendant care performed for 28 hours per week at the rate of $14.60 per hour, beginning on September 12, 2006, and continuing until professional services are obtained. Plaintiff shall immediately submit to defendants payment information including the social security number of plaintiff's wife who provided care and the allocation of the time provided so defendants may direct payment to plaintiff's wife. The payment of attendant care is not subject to attorney's fees.
4. Within 45 days of the date of this Opinion, defendants shall provide plaintiff with a suitable cover for the wheelchair sufficient to protect it from the elements during transport.
5. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from any lump sums due plaintiff and paid directly to counsel. Thereafter, counsel shall directly receive every fourth check.
6. Within thirty days of the filing of this Opinion and Award, plaintiff's counsel shall provide to the author of this Opinion and Award an affidavit and itemized statement of *Page 11 
hours spent in the defense of this appeal before the Full Commission. The undersigned, by separate Order, will thereafter provide for fees and costs pursuant to N.C. Gen. Stat. § 97-88.
7. Defendants shall pay the costs.
 * * * * * * * * * * *
This the 22nd day of July 2008.
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1